EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN PLANAS, acusado y apelante. EL MISMO, demandante y apelado, *v.* JOSÉ BALASQUIDE, acusado y apelante.

Nos. 4650 y 4651.—*Sometidos:* Marzo 10, 1932. *Resueltos:* Noviembre 17, 1932.

*Sergio Gelpí* y *C. Ruiz Nazario,* abogados de los apelantes; *E. Díaz Viera, Fiscal Auxiliar,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

En cada uno de estos casos un viandante fué arrollado por un tranvía. En ambos el motorista fué convicto de acometimiento y agresión.

Rodrigo Rodríguez era un policía de tránsito. Estaba de

servicio en la parada 22, en Santurce, donde los rieles del tranvía están situados en la parte sur de la avenida Ponce de León. En la parada 22, la Calle Europa parte de la Avenida en dirección sur. Pocas yardas hacia el este, la Avenida de Diego se extiende hacia el norte. Ni la Calle Europa ni la Avenida de Diego cruzan la Avenida Ponce de León. Rodríguez se hallaba de pie en el lado sur de la Avenida Ponce de León, de espaldas a los rieles del tranvía, y de frente hacia la Avenida de Diego, dirigiendo el tránsito. Había poco espacio entre los rieles del tranvía y el tránsito en dirección este en la Avenida Ponce de León. Rodríguez estaba parado como a un pie o dos del riel norte. Tenía por costumbre dejar la vía franca a los tranvías que pasaban y echar hacia atrás nuevamente para dar paso a los automóviles que por allí cruzaban. Fué golpeado en el lado izquierdo de la espalda, en la parte superior de los riñones, por el pasamanos que está cerca de la puerta delantera de un tranvía que se dirigía hacia el este.

En el momento del accidente, o sea, como a las doce y media de la tarde, había mucho tránsito. Poco antes del accidente el conductor de un automóvil "Dodge", que venía por la Avenida de Diego, hizo señal demostrativa de su intención de cruzar la Avenida Ponce de León en dirección a la Calle Europa. Rodríguez hizo al conductor señal de que prosiguiera. El conductor no la obedeció. La explicación ofrecida por Rodríguez mismo es que el conductor del "Dodge" había visto el tranvía. La inferencia es que el tranvía ya empezaba a cruzar la entrada a la Calle Europa. También es inferencia lógica que cuando Rodríguez dió al conductor del "Dodge" la señal de que cruzara la **Avenida** Ponce de León también detuvo otros vehículos en la Avenida, a fin de permitir que el "Dodge" cruzara, de suerte que no había ningún tránsito de vehículos de motor en dirección este que impidiera a Rodríguez que se saliera de la vía del

"trolley". Rodríguez había visto el tranvía detenerse al lado oeste de la Calle Europa, a unos quince o veinte metros de donde se hallaba. No le vió cuando dió marcha nuevamente, ni después, hasta que fué arrollado, ni oyó el ruido de su aproximación. En aquel momento llovía y Rodríguez usaba sobre su uniforme una capa de agua con una caperuza que le cubría la cabeza. El motorista no tocó la campana.

En el segundo caso el viandante salió de una calle transversal, en la intersección de la misma con la Calle del Parque, en la parada 43½, en Santurce, como a las 11½ de la noche, y chocó con un tranvía que corría a gran velocidad por la calle del Parque.

Podría admitirse que en cada uno de estos casos el motorista fué negligente. En el primer caso el motorista Planas pudo haber sido negligente al medir la distancia entre el riel norte y el sitio en que Rodríguez estaba de pie, al no tomar en cuenta en sus cálculos el pasamanos que proyectaba, al asumir que Rodríguez tenía conocimiento de su posición peligrosa y se saldría de la vía, o al tratar de pasar junto a Rodríguez sin dar aviso alguno. En el segundo caso podría suceder que el motorista Balasquide fuera negligente al conducir su carro por un cruce de calles a gran velocidad y al no prever que algún viandante pudiera salir de una calle transversal y descuidadamente penetrar en la vía o acercarse a ella arriesgadamente, no obstante lo avanzado de la hora y el ruido que el carro producía.

En ninguno de estos casos fué la negligencia tan crasa que justifique la inferencia de una intención de causar daño, que es elemento esencial en todo acometimiento y agresión. En ninguno de ellos se estableció el *mens rea* fuera de duda razonable.

*Ambas sentencias deben ser revocadas.*